UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK      **COMPLAINT**

Civil Rights Act, 42 U.S.C. §1983

Dennis Meehan

    -v-         Jury Trial Demanded

Defendant No.1 - State of New York
No.2 - N.Y. Dept. of Correctional Services ("DOCS")
No.3 - Corcraft Industries
No.4 - Governor George Pataki
No.5 - Commissioner Glenn Goord (DOCS)
No.6 - President/Commissioner of Corcraft, John Doe #1
No.7 - Superintendent, Auburn Corr. Fac., John Doe #2
No.8 - Plant Superintendent, Auburn Corr. Fac., John Doe #3
No.9 - Head Supervisor Saxton, Corcraft, Auburn C.F.
No.10 - Deputy Superintendent of Programs, Nelson

9:06CV769 FJS/GJD

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
JUN 12 2006
____ O'CLOCK
Lawrence K. Baerman, Clerk - Syracuse

Plaintiff - Dennis Meehan #92B2787
Upstate Corr. Fac.
P.O. Box 2001
Malone, N.Y.    12953

Defendant No.1  State of New York

Defendant No.2  N.Y. Dept. of Correctional Services, State Office Bldg #2, State Office Campus, Albany, N.Y. 12224

No. 3 Corcraft Industries, 550 Broadway, Albany, N.Y. 12204

No. 4 Governor George Pataki, Executive Chamber, State Capitol, Albany, N.Y. 12224

No. 5 Commissioner Glenn Goord, Department of Correctional Services, State Office Bldg. 2, State Office Campus, Albany, N.Y. 12226

No. 6 President/Commissioner, Corcraft Industries, 550 Broadway, Albany, N.Y. 12204 (John Doe #1)

No. 7 Superintendent, Auburn Correctional Facility, 135 State Street, Auburn, N.Y. 13024 (John Doe #2)

No. 8 Plant Superintendent, Auburn Correctional Facility, 135 State Street, Auburn, N.Y. 13024 (John Doe #3)

No. 9 Head Supervisor, Saxton, Corcraft, Auburn Correctional Facility, 135 State Street, Auburn, N.Y. 13024

No. 10 Deputy Superintendent for Programs, Nelson, Auburn Correctional Facility, 135 State Street, Auburn, N.Y. 13024

1. Upon information and belief, in the period plaintiff was housed at Auburn Correctional Facility ("Auburn C.F.") July 2001 - May 2005, proper government authorities were not notified prior to the initiation of removal projects and/or construction within the prison, which caused friable asbestos to contaminate the air.

2. Upon information and belief, asbestos abatement workers and/or construction workers who tapped into asbestos-laden areas, did not construct containment areas and set up negative air ventilation and filtration systems at work sites within Auburn C.F., said precautions required to remain in place until laboratory analysis confirms that the asbestos has been appropriately removed.

3. Upon information and belief, workers did not wet friable asbestos, to prevent the release of asbestos fibers into the air, before it could be removed.

4. Upon information and belief, no decontamination unit was used before abatement workers and/or construction workers that tapped into friable asbestos, left the contaminated areas.

5. Upon information and belief, asbestos which was removed from Auburn C.F. was not kept wet, appropriately sealed and transported to landfills specifically licensed to dispose of asbestos but, rather, dumped as ordinary garbage.

6. Upon information and belief, no accredited laboratories collected and analyzed samples of the air before, during and after any abatement removal, or construction projects tapping into friable asbestos, and no monitoring of workers, correction staff or prisoners was initiated by any accredited laboratory at any time.

7. Upon information and belief, when petitioner worked as a sanitation worker at Auburn C.F., he frequently loaded into a dump truck, asbestos-laden materials and/or friable asbestos packaged in regular plastic bags which had been brought out of different buildings during construction projects (i.e. the clinic, the media center, the administration building, A-E blocks, the storehouse, commissary, the messhall, industry/corcraft).

8. Upon information and belief, when tossing plastic bags filled with contaminated materials into a dump truck, there were many times when bags opened, coating petitioner with said material and releasing visible emissions of asbestos fibers into the air.

9. Upon information and belief, when petitioner later worked as a porter at Industry/Corcraft, from approximately April 2004-May 2005, he frequently removed asbestos-laden material

to a dock to be removed by sanitation workers.

10. Upon information and belief, when petitioner, while a porter at Industry/Coxsackie, cleaned seven or more elevator shafts and cleaned an old, filthy boiler room he was unnecessarily exposed to friable asbestos, particularly the bottoms of the elevator shafts which, during the cleaning caused asbestos fibers and dirt to kick up like a dust storm.

11. Upon information and belief, when rows of heating pipes were removed from A block, petitioner was exposed to asbestos, as he had to walk through this block between three to six times a day on the way to the messhall.

12. Upon information and belief, when rows of heating pipes were removed from E block, where petitioner was housed, he was exposed to asbestos, as there was what appeared to be both brown and white shredded plastic-type debri on the ground all down the gallery underneath his cell and fibers visibly in the air in front of his cell and inside his cell for the duration of the pipe removal.

13. Upon information and belief, the asbestos-related violations at Auburn C.F. from July 2001-May 2005 were so numerous

And widespread that the Superintendent, Deputy Superintendent of Administration, Deputy Superintendent of Programs, Plant Superintendent, Supervisor at Corcraft, Supervisor of Asbestos Abatement (done by civilian workers), Supervisor of Asbestos Abatement (done by prisoner workers) all either actively participated in the violations or failed to act.

14. Upon information and belief, and due to the prevalence of the problem at Auburn C.F. and very likely at many older prisons throughout N.Y. State, Commissioner Goord has turned a blind eye to this severe health hazard not only to prisoners, guards and civilian workers within Auburn C.F. and other prisons but also to all guests which tour the facilities, including young children (e.g. Youth Assistance Program - Y.A.P.) all people that visit prisoners as well as the general public in and around Auburn, where the prison is located.

15. Upon information and belief, if the above situation at Auburn C.F. is happening at other older prisons in and around towns, it could become or has become of epidemic proportion, demonstrating that Governor George Pataki has failed to monitor those shouldered with the authority to prevent this health hazard from occurring, he has further failed to properly oversee and question practices utilized by the Commissioner of D.O.C.S. due to his personal predilections, which include a tough on crime mantra,

tough on prisoners view and this personal bias has helped cause not only this prisoner to be subjected to a health hazard but many other people as well and, as such, he is personally liable because he controls, directs and/or exerts a strong and guiding influence over Commissioner Goord.

16. Upon information and belief, plaintiff has experienced constant worry, anxiety, fear and severe, unexplainable headaches due to exposure to friable asbestos in conjunction with knowledge of severe future harm and/or death due to same.

17. Plaintiff, while at Upstate C.F., filed a grievance concerning the above asbestos exposure (submitted May 1, 2006) and due to a failure to respond, wrote a follow-up letter to the grievance dept at Upstate C.F., which also went unanswered.

18. On May 22, 2006, plaintiff filed an appeal to the Director of Inmate Grievance Programs, T. Eagen, having taken Upstate's grievance department's ignoring of his grievance as a constructive denial.

19. WHEREFORE, plaintiff requests judgment and damages in his favor and damages in his favor against all defendants in an amount sufficient to compensate him for pain and mental anguish suffered

by him due to the deliberate indifference and intentional misconduct of defendants and for future pain, suffering and loss; but in no event less than $750,000, excluding Attorney fees and costs and such additional relief as the Court may deem just and proper.

Signed this 7th day of June, 2006. I declare under penalty of perjury that the foregoing is true and correct

*Dennis Meehan*
Dennis Meehan #92B2787
Upstate Corr. Fac.
P.O. Box 2001
Malone, N.Y. 12953

I declare under penalty of perjury that on this 8th day of June, 2006, I will deliver this complaint to prison authorities to be mailed to the Pro Se Office of the United States District Court for the Northern District of New York

*Dennis Meehan*