UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DENNIS MEEHAN,

                                                   Plaintiff,

    vs.                                                                                            9:06-CV-769
                                                                                                                     (FJS/GJD)

STATE OF NEW YORK, et al.,

                                                Defendants.
_____

DENNIS MEEHAN, Plaintiff *pro se*
TIMOTHY P. MULVEY, Asst. Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to the undersigned for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that, while incarcerated, he was repeatedly exposed to friable asbestos during the course of his employment as a sanitation worker and as a porter for Industry/Corcraft at Auburn Correctional Facility. Compl. ¶¶ 1-12 (Dkt. No. 1). Plaintiff seeks substantial monetary relief. Compl. ¶ 19.

Presently before the court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 38). Plaintiff has responded in opposition to the motion. (Dkt. No. 42). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

**DISCUSSION**

**1.      Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006)(citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying

the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**2.  Facts**

Plaintiff alleges that he was incarcerated in Auburn Correctional Facility between July 2001 and May 2005. Compl. ¶ 1. Plaintiff claims that during this time, facility personnel did not follow proper procedures when initiating asbestos removal or other construction projects, causing friable asbestos to "contaminate the air." *Id.* ¶¶ 1-2. Plaintiff alleges a variety of precautions that were not taken, resulting in asbestos contamination. Compl. ¶¶ 2-6.

Plaintiff alleges that as a result of the improper handling of asbestos in the facility, plaintiff was unnecessarily exposed to asbestos during the time that he worked as a sanitation worker at Auburn. Compl. ¶ 7. Plaintiff complains that during various construction projects that were completed at Auburn, plaintiff was required to load "asbestos-laden" materials into dump trucks. *Id.* Plaintiff claims that these materials were often packaged in regular plastic bags, which often opened, causing plaintiff to be covered in asbestos and releasing asbestos fibers into the air. Compl. ¶ 8.

3

Plaintiff also alleges that from April 2004 until May 2005, he worked as a porter for Industry/Corcraft at Auburn. Compl. ¶ 9. Plaintiff claims that during this time, he was unnecessarily exposed to more asbestos while he cleaned elevator shafts and a boiler room. Compl. ¶ 10. Finally, plaintiff alleges that he was further exposed to asbestos when heating pipes were removed from A-Block and E-Block. Compl. ¶¶ 11-12. Plaintiff alleges that the asbestos-related violations were so "numerous" between 2001 and 2005 that all the supervisory officials named in the complaint must have been aware of the situation and either "participated" in the violations or "failed to act." Compl. ¶¶ 13-15. These supervisory officials include both individuals who work at Auburn, together with former Commissioner Glenn Goord and former Governor George Pataki. Compl. ¶¶ 14-15.

Plaintiff initially named ten defendants. The State of New York, Corcraft Industries, and the Department of Correctional Services (DOCS) were dismissed from this action by Senior Judge Scullin on October 11, 2006. (Dkt. No. 4). Plaintiff also named three "John Doe" defendants. In Senior Judge Scullin's October 11, 2006 order, he directed plaintiff to take reasonable steps to identify and serve these individuals, warning plaintiff that the failure to do so could result in dismissal of the action against them. (Dkt. No. 4 at 4).

Of the remaining named defendants, service has been completed only as to Glenn Goord, former Commissioner of DOCS; Ronald Nelson, Deputy Superintendent of Programs; and David Saxton, Head Supervisor of Corcraft.[1] (Dkt. Nos. 10, 23, 24).

---

[1] At the time the complaint was served on Ronald Nelson and David Saxton, both individuals were no longer employed by DOCS. (Dkt. No. 17). In a letter from DOCS Deputy

4

Former Governor George Pataki has not been served in this action.

## 3. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants. *Scott v. Del Signore*, 2005 U.S. Dist. LEXIS 6070, *12-15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at *12-13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103. In

---

Counsel William Gonzalez, he informed the court that these defendants had agreed to accept service through DOCS Counsel. *Id.*

*Woodford*, the Court concluded that the inmates did not properly exhaust their administrative remedies when their grievances were dismissed because the inmates had missed the deadlines set forth in the grievance procedure. *Id.* at 93.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b). At the time that plaintiff's incident arose, an inmate had fourteen (14) days within which to file a complaint.[2] An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a)(Inmate's Responsibility).

In this case, defendants argue that plaintiff has not exhausted his administrative remedies. In the complaint, plaintiff alleges that, while he was incarcerated at Upstate Correctional Facility in ***May of 2006***, he filed a grievance concerning his alleged asbestos exposure. Compl. ¶ 17. Plaintiff claims that he did not get a response, and he

---

[2] The court notes that the regulations were re-numbered in 2006. The court will cite to the new regulation numbers. The original regulation number for the time to file grievances was section 701.7(a)(1), and provided a fourteen day time limit. *See Tackman v. Goord*, 2005 U.S. Dist. LEXIS 42654, *51 (W.D.N.Y. Sept. 26, 2005)(citing regulations). The regulations have been amended to allow inmates twenty-one (21) calender days from an alleged occurrence within which to file a grievance, and the deadline appears in section 701.5. N.Y. CIV. PRAC. L. & R., tit.7, § 701.5(a)(1). *See also Winston v. Dodge*, 07 Civ. 1805, 2008 U.S. Dist. LEXIS 60966, *8-9 n.2 (S.D.N.Y. Aug. 5, 2008)(citing new regulations with the 21 day limit).

6

wrote a follow-up letter to the Grievance Department at Upstate. *Id.* When plaintiff did not get an answer to his follow-up letter, he considered this a "constructive denial" of his grievance. Compl. ¶¶ 17-18. As a result of this "constructive denial," plaintiff states that on May 22, 2006, he filed an "appeal" to the Director of Inmate Grievance Programs. Thus, plaintiff argues that he exhausted his administrative remedies.

This court does not agree with plaintiff's argument. First, the court notes that plaintiff claims that he was exposed to asbestos between 2001 and 2005 at Auburn, but he waited until May of 2006 while he was incarcerated at another facility to complain about the asbestos. Defendants submit a letter that was sent to plaintiff from Thomas Eagen, Former Director of the Inmate Grievance Program. Def. Ex. D. Director Eagen acknowledges the plaintiff's May 21, 2006[3] letter and states that "[c]ontact with the facility administration at Upstate Correctional Facility reveals that you do not have a grievance on file regarding asbestos." *Id.*

The letter informs plaintiff that he cannot send his complaints directly to the Central Office, and specifically states that plaintiff should address his concerns regarding his asbestos grievance to the Inmate Grievance Program Supervisor "via regular facility procedures or to IGP staff during rounds." *Id.* Director Eagen's letter to plaintiff is dated ***June 12, 2006***, the same day plaintiff's complaint in this federal action was received by the court. (Dkt. No. 1). Thus, plaintiff ***mailed his federal complaint prior to receiving Director Eagan's letter responding to plaintiff's***

---

[3] Plaintiff states that this letter is a May 22, 2006 letter, but defendants have submitted a copy of plaintiff's letter, and it is dated May 21, 2006. Def. Ex. C. Plaintiff has misstated the date in the complaint.

7

*inquiry about his alleged grievance*.  It is quite clear that plaintiff did *not* properly exhaust his administrative remedies prior to filing this action.

Plaintiff does not allege that he filed any other grievances regarding the asbestos issue, even after he was told that he could do so.  Defendants have submitted the affidavit of the current director of the Inmate Grievance Program, Karen Bellamy.  Director Bellamy states that she is also the custodian of CORC records, and she conducted a search of the CORC database for records of appeals filed by plaintiff.  Bellamy Aff. ¶¶ 5-6.  The database search revealed that plaintiff appealed six grievances to the CORC. *Id.* ¶ 7 & Ex. B.  A list of these appeals shows that none of the grievance appeals involve asbestos. *Id.* Ex. B.  Plaintiff filed three grievance appeals *after* June 12, 2006, and *none of them involved asbestos*. *Id.*

Although there are circumstances in which the exhaustion requirement may be waived, this case is not one of those circumstances.  The Second Circuit has developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill*, 380 F.3d at 686).  The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Plaintiff in this case does not meet the Second Circuit standard for waiver.  Plaintiff's response to defendant's motion does not address the defendant's argument,

8

and instead, merely repeats the substantive part of his complaint. Clearly, plaintiff had a grievance procedure available to him for *years*. Plaintiff was clearly aware of the system since he filed various grievances and appeals of those grievances to the CORC on a variety of complaints, from ingrown toenails to the complaints about the grievance program itself. Bellamy Aff. Ex. B.

Defendants have not done anything that would estop them from raising the defense. Plaintiff did not even wait for former Director Eagen to respond to his letter before filing the federal complaint. Director Eagen's letter specifically informed plaintiff that there was no record of a grievance filed regarding the asbestos complaint and directed plaintiff to the proper facility procedure. There are ***no special circumstances*** that justify plaintiff's failure to properly exhaust his claims. Thus, this complaint must be dismissed for failure to exhaust administrative remedies.

### 4. Service of Process

Rule 4 of the Federal Rules of Civil Procedure requires that service of process be made within 120 days after the complaint is filed. FED. R. CIV. P. 4(m). If service is not effected, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Id. When plaintiff is proceeding *pro se* and *in forma pauperis*, he is entitled to rely on the U.S. Marshal to serve process. *Romandette v. Wheetabix*, 807 F.2d 309 (2d Cir. 1986). See also 28 U.S.C. § 1915(d); Local Rules N.D.N.Y. 5.1(g).

In this case, service has not been effected on former Governor Pataki, and three John Doe defendants have not been identified or served. Since the court is

9

recommending dismissal for failure to exhaust administrative remedies, the court need not address whether to dismiss the action "without prejudice" as against defendant Pataki[4] and the John Doe defendants.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 38) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 8, 2009

                                                Hon. Gustave J. DiBianco
                                                U.S. Magistrate Judge

---

[4] The court would also note that regardless of exhaustion or service issues, it appears that the complaint could have been dismissed as against defendant Pataki based upon a lack of personal involvement in plaintiff's alleged violations. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Although plaintiff in this case alleges that Governor Pataki failed to monitor DOCS, there is absolutely no indication that defendant Pataki has control over asbestos removal or other safety issues in the prison facilities in New York State. At best, plaintiff is stating a "respondeat superior" claim, which would not have survived.