**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DENNIS MEEHAN,**

                                        **Plaintiff,**

            **v.**                                               **9:06-CV-769**
                                                                 **(FJS/GJD)**

**GEORGE PATAKI, Governor; GLENN GOORD,**
**Commissioner, DOCS; JOHN DOE #1, President,**
**Corcraft; JOHN DOE # 2, Superintendent, Auburn**
**Correctional Facility; SAXTON, Head Supervisor,**
**Corcraft; and NELSON, Deputy Superintendent of**
**Programs,**

                                        **Defendants.**

_____

**APPEARANCES**                          **OF COUNSEL**

**DENNIS MEEHAN**
**92-B-2787**
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821
Plaintiff _pro se_


**OFFICE OF THE NEW YORK**                **TIMOTHY P. MULVEY, AAG**
**STATE ATTORNEY GENERAL**
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Currently before the Court are Plaintiff's objections to Magistrate Judge DiBianco's July 8, 2009 Report-Recommendation in which he recommended that the Court grant Defendants' motion for summary judgment because Plaintiff failed to exhaust his administrative remedies. On July 18, 2009, Plaintiff objected to this finding, alleging that Defendants' untimely processing of the grievance he filed with the Department of Corrections rendered the administrative remedies "unavailable." *See* Dkt. No. 45 at 1.

## II. BACKGROUND

On June 12, 2006, Plaintiff *pro se* filed this action under 42 U.S.C. § 1983, alleging violations of his rights under the Eighth Amendment. Plaintiff alleged that he was exposed to friable asbestos during his incarceration at Auburn Correctional Facility and that, because of this exposure, Defendants violated his Eighth Amendment rights.

Specifically, Plaintiff contended that, while he was incarcerated at Auburn Correctional Facility ("ACF"), between July 2001 and May 2005, facility personnel did not follow proper procedures when initiating asbestos removal or other construction projects, causing friable asbestos to "contaminate the air." *See* Complaint at ¶¶ 1-2. He further alleged a variety of precautions that facility personnel did not take, resulting in asbestos contamination. *See id.* at ¶¶ 2-6. Moreover, Plaintiff complained that, during various construction projects at Auburn Correctional Facility, he was required to load "asbestos-laden" materials into dump trucks and

that these materials were often packaged in regular plastic bags, which would open, causing him to be covered in asbestos and releasing asbestos fibers into the air. *See id.* at ¶ 8.

Plaintiff also claimed that, from April 2004 until May 2005, he worked as a porter for Industry/Corcraft at Auburn Correctional Facility. *See id.* at ¶ 9. Plaintiff contended that, during that time, he was unnecessarily exposed to more asbestos while he cleaned elevator shafts and a boiler room. *See id.* at ¶ 10. Finally, Plaintiff asserted that he was further exposed to asbestos when heating pipes were removed from A-Block and E-Block. *See id.* at ¶¶ 11-12. Plaintiff alleged that the asbestos-related violations were so "numerous" between 2001 and 2005 that all the supervisory officials named in the complaint must have been aware of the situation and either "participated" in the violations or "failed to act." *See id.* at ¶¶ 13-15. These supervisory officials include both individuals who worked at Auburn Correctional Facility, as well as former Commissioner Glenn Goord and former Governor George Pataki. *See id.* at ¶¶ 14-15.

On September 30, 2008, Defendants filed a motion for summary judgment. In support of their motion, they claimed that (1) Defendant Pataki was never served and must be dismissed; (2) the "Doe" Defendants were neither identified nor served and must be dismissed; (3) the official capacity claims must be dismissed; (4) Plaintiff failed to exhaust administrative remedies; and (5) the named Defendants were not personally involved in any alleged constitutional violations. Magistrate Judge DiBianco recommended that the Court grant Defendants' motion for summary judgment, explaining that, because there are no special circumstances that justify Plaintiff's failure to properly exhaust his claims, the Court is required to dismiss the complaint for failure to exhaust administrative remedies. *See* Dkt. No. 44 at 9.

### III. DISCUSSION

Citing *Booth v. Churner*, 532 U.S. 731, 738 (2001), Plaintiff urges that a "remedy for contamination by exposure to friable asbestos . . . was not available to plaintiff," thereby excusing his failure to exhaust his administrative remedies.  *See* Dkt. No. 45 at 1.  Plaintiff further argues that he was prevented from using the grievance procedures because his grievance was "not only not answered but 'disappeared.'" *See id.* (citation omitted).  Finally, he urges that he made "good faith" efforts to have the prison system address his grievance.

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  *See Booth*, 532 U.S. at 740-41.  This "requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,'" and regardless of the subject matter of the claim.  *See, e.g., Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *See id.*  The failure to exhaust is an affirmative defense that defendants  must raise.  *See Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) (citation omitted).  As an affirmative defense, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements.  *See Giano,* 380 F.3d at 675 (citation omitted).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that, for an inmate to exhaust his administrative remedies, he must complete the administrative review process in accordance with the applicable state rules.  *See id.* (citation omitted).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review

process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 N.Y.C.R.R. § 701.5(a)(1) and (b). At the time that Plaintiff's incident arose, an inmate had fourteen (14) days within which to file a grievance.[1] An inmate may appeal an adverse decision of the IGRC to the Superintendent of the Facility. *See id*. § 701.5(c). An inmate may appeal an adverse decision at the Superintendent's level to the Central Office Review Committee ("CORC"). *See id*. § 701.5(d).

In his complaint, Plaintiff alleges that, while he was incarcerated at Upstate Correctional Facility in May of 2006, he filed a grievance concerning his alleged asbestos exposure. *See* Complaint at ¶ 17. Plaintiff claims that, when he did not get a response, he wrote a follow-up letter to the Grievance Department at Upstate Correctional Facility. *See id.* When Plaintiff did not get an answer to his follow-up letter, he considered this a "constructive denial" of his grievance. *See id.* at ¶¶ 17-18. Plaintiff states that, as a result of this "constructive denial," on May 22, 2006, he filed an "appeal" to the Director of Inmate Grievance Programs. Thus, Plaintiff argues that he exhausted his administrative remedies.

---

[1] The Court is using the regulation numbers as renumbered in 2006. The original regulation number for the time to file grievances was section 701.7(a)(1) and provided a fourteen-day time limit. *See Gamble v. Allen*, No. 9:06-CV-1182, 2009 WL 1286198, *8 n.6 (N.D.N.Y. May 06, 2009) (citation omitted). The regulations have been amended to allow inmates twenty-one (21) calendar days from an alleged occurrence within which to file a grievance, and the deadline appears in 7 N.Y.C.R.R. § 701.5(a)(1). *See id.* (citation omitted).

As a preliminary matter, the Court notes that, although Plaintiff claims that he was exposed to asbestos between 2001 and 2005 at Auburn Correctional Facility, he waited until May of 2006, when he was incarcerated at another facility, to complain about the asbestos exposure. *See id.* at ¶¶ 1, 17. Furthermore, Thomas Eagen, Former Director of the Inmate Grievance Program, sent Plaintiff a letter, *see* Dkt. No. 38-4 at Exhibit "D," in which he acknowledged Plaintiff's May 21, 2006 letter and stated that "[c]ontact with the facility administration at Upstate Correctional Facility reveals that you do not have a grievance on file regarding asbestos," *see id.*

Director Eagen also informed Plaintiff that he could not send his complaints directly to the Central Office and specifically instructed Plaintiff that he should address his concerns regarding his asbestos grievance to the Inmate Grievance Program Supervisor "via regular facility procedures or to IGP staff during rounds." *See id.* Director Eagen's letter to Plaintiff is dated June 12, 2006, the same day that the Court received Plaintiff's complaint in this federal action. *See* Dkt. No. 1. Thus, it is clear that Plaintiff mailed his federal complaint prior to receiving Director Eagan's letter responding to his inquiry about his alleged grievance. It is also quite clear that, under these circumstances, Plaintiff did not properly exhaust his administrative remedies prior to filing this action. Further, despite the guidance that Director Eagen provided to Plaintiff in his June 12, 2006 letter, Plaintiff still did not take the appropriate action to exhaust his administrative remedies. Plaintiff does not allege that he filed any other grievances regarding the asbestos issue, even after Director Eagen told him that he could do so. Defendants have submitted the affidavit of the current director of the Inmate Grievance Program, Karen Bellamy. Director Bellamy states that she is also the custodian of CORC records and that she conducted a

search of the CORC database for records of appeals that Plaintiff had filed.  *See* Affidavit of

Karen Bellamy sworn to September 26, 2008 ("Bellamy Aff."), at ¶¶ 5-6.  Her database search

revealed that Plaintiff appealed six grievances to the CORC.  *See id.* ¶ 7 & Exhibit "B."  A list of

these appeals shows that none of the grievance appeals involve asbestos.  *See id.*  at Exhibit "B."

Furthermore, although Plaintiff filed three grievance appeals after June 12, 2006, none of them

involved the claim at issue here.  *See id.*

   Although there are circumstances in which an inmate may be excused from failing to

exhaust administrative remedies, no such circumstances are present here.  The Second Circuit

has developed a "three part inquiry" to determine whether a court should excuse an inmate from

fulfilling the PLRA exhaustion requirement.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d

Cir. 2006) (citation omitted).  The inquiry asks (1) whether the administrative remedies were

available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them

from raising the defense; and (3) whether special circumstances justify the inmate's failure to

comply with the exhaustion requirement.  *See id.*

   Plaintiff does not meet the Second Circuit's test.  Although Plaintiff claims that a remedy

for his injury was not available to him under the grievance procedure and that Defendants failed

to respond to his grievance, he has not set forth any facts to substantiate these claims.  Further,

Plaintiff was clearly aware of the grievance procedures since he filed various grievances and

appeals of those grievances to the CORC on a number of occasions. *See* Bellamy Aff. at Exhibit

"B."

   Moreover, although Plaintiff only seeks money damages for his injuries and such

damages are not available through the grievance process, he is still required to exhaust these

administrative remedies.  *See Booth*, 532 U.S. at 740-41 (holding that, when Congress removed the word "effective" from the PLRA, it made clear that exhaustion is required, regardless of whether such relief is offered through administrative avenues).

Moreover, Plaintiff has not come forward with any evidence to show that Defendants did anything that would estop them from raising this affirmative defense.  Director Eagen responded to Plaintiff's May 2006 letter and specifically informed Plaintiff that there was no record of his filing a grievance regarding the asbestos complaint and directed Plaintiff to the proper facility procedure so that his grievance could be addressed.  Further, even if Plaintiff considered Defendant's failure to respond to his first grievance as a "constructive denial," Plaintiff still needed to follow the administrative remedies prescribed for such a denial – an appeal to the Superintendent of the facility.

Finally, Plaintiff appears to allege that "special circumstances" exist because he was exposed to this hazardous substance and used as a "human guinea pig."  *See* Dkt. No. 45 at 2. Although it is true that "special circumstances" may excuse a prisoner's failure to exhaust his administrative remedies, no such circumstances exist here.  The "special circumstances" exception applies to cases where either the defendant's actions prevented the plaintiff from exhausting his administrative remedies, or where the plaintiff had reasonable confusion over the requirements of the grievance regulations.  *See, e.g.*, *Giano*, 380 F.3d at 675 (holding that a reasonable misinterpretation of a DOCS regulation constituted a "special circumstance.").  As Plaintiff has not alleged any such reasons for his failure to exhaust his administrative remedies, there are no special circumstances that preclude dismissal.

-8-

## IV. CONCLUSION

After carefully considering Magistrate Judge DiBianco's Report-Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge DiBianco's July 8, 2009 Report-Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment for Defendants and close this case.

**IT IS SO ORDERED.**

Dated: September 29, 2009
         Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge